## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Amanda Marie Smith,

        Plaintiff,

v.

Commissioner of Social Security,

        Defendant.

_____

Case No. 2:21-cv-10093-SJM-JJCG
District Judge Stephen J. Murphy, III
Magistrate Judge Jonathan J.C. Grey

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Amanda Marie Smith seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Smith's applications for disability insurance benefits and supplemental security income under the Social Security Act. Smith filed a motion for summary judgment (ECF No. 15), the Commissioner filed a response and cross-motion for summary judgment (ECF No. 16), and Smith replied (ECF No. 17).

For the following reasons, the Court **RECOMMENDS** that Smith's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

## I.    Background

### A. Procedural History

In June 2018, Smith filed a (1) Title II application for the period of disability, disability insurance benefits and (2) Title XVI application for supplemental security income.[1] (Tr. 12.) In both applications, the claimant alleged that her disability began on May 30, 2018. *Id.* On July 20, 2018, both applications were denied. (Tr. 95–109.) Smith requested a hearing, and on February 25, 2020, she appeared with a non-attorney representative before Administrative Law Judge Janet Alaga-Gadigian ("ALJ"), who reviewed the case *de novo*. (Tr. 111–113; 32–63.) In an April 10, 2020 decision, the ALJ found that Smith was not disabled. (Tr. 12–26). The ALJ's decision became final when the Appeals Council denied review on November 9, 2020. (Tr. 1–11); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543–44 (6th Cir. 2004).

### B. The ALJ's Application of the Disability Framework

Under the Social Security Act, disability insurance benefits and supplemental security income are available only for those who have a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[1] The administrative record appears on the docket at entry number 12. All references to it are identified as "Tr."

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (definition used in the disability insurance benefits context); *see also* 20 C.F.R. § 416.905(a) (definition used in the social security income context).

The Commissioner determines whether a claimant is disabled through a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920. First, if the claimant is engaged in significant gainful activity, no disability will be found. Second, if the claimant does not have a severe impairment or combination of severe impairments for a continuous period of at least 12 months, no disability will be found. Third, if the claimant's severe impairment meets or equals one of the impairments listed in the regulations, the claimant will be found disabled. Fourth, if the claimant can perform their past relevant work or has residual functional capacity ("RFC"), no disability will be found. Fifth, even if the claimant is unable to perform their past relevant work, benefits are denied if the claimant can adjust to other work in view of their age, education, and work experience. If the Commissioner "makes a dispositive finding at any point in the five-step process," the evaluation will not proceed to the next step. *Colvin*, 475 F.3d at 730.

The claimant bears the burden of proof through step four, in which they must show "the existence and severity of limitations caused by [their] impairments and the fact that [they] are precluded from performing [their] past relevant work."

3

*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003.) At step five, the burden shifts to the Commissioner in which the Commissioner must show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [their] RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007).

Smith, born on February 11, 1977, was 41 years old on the alleged disability onset date. (Tr. 64.) She has an eighth-grade education and past relevant work as a skiver. (Tr. 219.) She alleges she cannot work because of migraines, anxiety, attention deficit disorder, depression, obsessive-compulsive disorder, post-traumatic stress disorder, and restless legs syndrome. (Tr. 95.)

The ALJ applied the five-step disability analysis and found at step one that Smith had not engaged in substantial gainful activity since the alleged onset date of May 30, 2018. (Tr. 14.) At step two, the ALJ found that Smith had the following severe impairments: obesity, chiari malformation with sequalae including migraine headaches, degenerative disc disease of the cervical spine, protrusions at C4-C5, major depressive disorder, post-traumatic stress disorder, attention deficit disorder, obsessive compulsive disorder, and adjustment disorder. (Tr. 15.) At step three, the ALJ found no evidence that Smith's impairments met or medically equaled one of the listings in the regulations. (Tr. 15–18.) Next, the ALJ determined that Smith has the RFC to perform light work with certain limitations:

4

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: no climbing of ladders, ropes, or scaffolds; no crawling; frequent balancing; occasional climbing of ramps and stairs; occasional stooping, crouching, and kneeling; frequent reaching except for overhead; no overhead reaching; frequent gross manipulation; no exposure to hazardous machinery or unprotected heights; no driving on the job; light exposure should be no more than office level; noise exposure should be no more than office level; occasional exposure to environmental irritants; work is limited to that which can be learned in 30 days or less; unskilled work with SVP levels 1 or 2; no production rate pace; no interaction with the public; occasional interaction with coworkers and supervisors; no tandem tasks required.

(Tr. 18–24.) At step four, the ALJ found that Smith was unable to perform any past relevant work. (Tr. 24.) At step five, the ALJ denied Smith benefits, finding that there were jobs in significant numbers in the national economy that Smith can perform. (Tr. 24–25.)

## II.   Discussion

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final administrative decision. The Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations and internal quotations omitted). Substantial

5

evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. In determining whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted); *see also Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

If the Commissioner's decision is supported by substantial evidence, it "must be affirmed even if the reviewing court would decide the matter differently . . . and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). Moreover, the ALJ is not required to discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).

The Court's review is limited to an examination of the record. *Bass*, 499 F.3d at 512–13. The Court "may look to any evidence in the record, regardless of

6

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir.2001) (citation omitted).

### B. Analysis

Smith contends that the ALJ committed reversible legal error because the

ALJ failed to consider whether Smith's migraines medically equal Listing 11.02

(Epilepsy), improperly relied on the opinion of the state agency reviewing

psychologist, and improperly discounted the opinion of the consultive examiner.

(ECF No. 15.) The Commissioner counters that the ALJ's decision should be

affirmed because Smith's primary headache disorder does not medically equal a

listed impairment and because the ALJ's assessment of Smith's impairments is

supported by substantial evidence. (ECF No. 16.)

### 1. The ALJ's Step Three Determination

Smith first argues that the ALJ erred by failing to consider whether Smith's

migraines medically equal Listing 11.02 at step three, claiming that Smith's

headaches meet the frequency requirement of Listing 11.02B. (ECF No. 15,

PAGEID.795–798.) At step three, Smith bears the burden to demonstrate that the

severity of her impairments meets or medically equals the severity of a listing.

*Jones*, 336 F.3d at 474. Each listing specifies the "objective medical and other

findings needed to satisfy the criteria of that listing." *Rabbers v. Comm'r*, 582 F.3d

647, 653 (6th Cir. 2009) (citation and internal quotations omitted). To show

medical equivalency to a listing, a claimant must satisfy all the criteria of that

listing. *Id.*

Because there is no listed impairment for headaches or migraines, the ALJ

considered Smith's impairments in the context of Listing 11.02. (Tr. 16.; SR 19-4p,

2019 WL 4169635, at *7 (Aug. 26, 2019) (stating that epilepsy is the most closely

analogous impairment for a primary headache disorder)). To meet Listing 11.02, a

claimant must demonstrate or medically equal part A, B, C, or D of the listing:

> A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at
>    least once a month for at least 3 consecutive months (see 11.00H4)
>    despite adherence to prescribed treatment (see 11.00C); or
> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a
>    week for at least 3 consecutive months (see 11.00H4) despite
>    adherence to prescribed treatment (see 11.00C); or
> C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least
>    once every 2 months for at least 4 consecutive months (see
>    11.00H4) despite adherence to prescribed treatment (see 11.00C);
>    and a marked limitation in one of the following:
>    1. Physical functioning (see 11.00G3a); or
>    2. Understanding, remembering, or applying information (see
>       11.00G3b(i)); or
>    3. Interacting with others (see 11.00G3b(ii)); or
>    4. Concentrating, persisting, or maintaining pace (see
>       11.00G3b(iii)); or
>    5. Adapting or managing oneself (see 11.00G3b(iv)); or
> D. Dyscognitive seizures (see 11.00H1b), occurring at least once every
>    2 weeks for at least 3 consecutive months (see 11.00H4) despite
>    adherence to prescribed treatment (see 11.00C); and a marked
>    limitation in one of the following:
>    1. Physical functioning (see 11.00G3a); or
>    2. Understanding, remembering, or applying information (see
>       11.00G3b(i)); or
>    3. Interacting with others (see 11.00G3b(ii)); or

8

     4. Concentrating, persisting, or maintaining pace (see
       11.00G3b(iii)); or

     5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Part 404, Subpt. P, App. § 11.02 (effective Mar. 14, 2018). Here,
the ALJ determined that while a person with a primary headache disorder could
exhibit equivalent symptoms and limitations to 11.02B or 11.02D, Smith did not
meet either criteria. (Tr. 16.) Contrary to Smith's assertions, however, the ALJ
considered and cited specific reasons for finding that Smith's migraines did not
qualify under Listing 11.02. The ALJ reasoned that Smith's testimony about the
frequency and severity of headaches contradicted the medical records and that
Smith can engage in a "wide range of daily activities." *Id.* Additionally, the ALJ
found that the record supports that Smith was likely suffering from headaches due
to medicine overuse and that her headaches improved with other treatment. *Id.* The
Commissioner contends that substantial evidence supports the ALJ's findings.

First, the Commissioner argues that headache frequency is not sufficient to
medically equal a listed impairment. In determining whether a primary headache
disorder meets Listing 11.02, the Social Security Administration (SSA) will
consider several factors:

> [A] detailed description from an [accepted medical source] of a
> typical headache event, including all associated phenomena (for
> example, premonitory symptoms, aura, duration, intensity, and
> accompanying symptoms); the frequency of headache events;

adherence to prescribed treatment; side effects of treatment (for
example, many medications used for treating a primary headache
disorder can produce drowsiness, confusion, or inattention); and
limitations in functioning that may be associated with the primary
headache disorder or effects of its treatment, such as interference with
activity during the day.

SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019). Although "frequency of
headache events" is a factor, it is one of several. *Id.* The ALJ assessed headache
frequency alongside other factors, including the lack of limitations in functioning
and side effects of treatment. (Tr. 16.) The ALJ therefore did not err in finding
inconsistencies in the frequency of Smith's headaches.

Second, the Commissioner argues that Smith's daily activities are not
medically equivalent to the limitations in functioning required in Listing 11.02B.
The ALJ must consider the outlined SSR 19-4p factors to establish severity and
duration, even if the ALJ finds that Smith's migraines meet the frequency
requirement of 11.02B (at least once a week for at least 3 consecutive months).
SSR 19-4p, 2019 WL 4169635 (Aug. 26, 2019). This includes the SSR 19-4p
factor of "limitations in functioning . . . such as interference with activity during
the day." *Id.* The ALJ did not err in concluding that because Smith engages in
many activities, including cooking, grocery shopping, doing chores, caring for a
teenage daughter, and driving, she is not functionally limited in accordance with
the SSR 19-4p guidance. (Tr. 16.)

Similarly, even if Smith's migraines met the frequency requirement of

11.02D (at least once every 2 weeks for at least 3 consecutive months), Smith

would also have to meet the other criteria outlined in SSR 19-4p. SSR 19-4p, 2019

WL 4169635 (Aug. 26, 2019). This includes consideration of the overall effects of

the primary headache disorder on functioning results in marked limitation in

certain areas. *Id.* Smith cannot show marked limitation in (1) physical functioning;

(2) understanding, remembering, or applying information; (3) interacting with

others; concentrating, persisting or maintaining pace; or (4) adapting or managing

oneself. To reach that conclusion, the ALJ appropriately assessed Smith's function

report and self-reported daily activities. (Tr. 16–17.)

The Commissioner further argues that Smith's self-reported descriptions of

her headaches are not medically equivalent to a medical professional's

observations. (ECF No. 16, PAGEID.822.) The SSA considers "a detailed

description from an [accepted medical source]." SSR 19-4p, 2019 WL 4169635, at

*7 (Aug. 26, 2019). "Accepted medical sources" include licensed physicians,

licensed psychologists, and other licensed medical professionals. 20 C.F.R. §

404.1502(a). Here, the ALJ relied on Smith's medical records, including a

radiology reports and numerous treatment records. (Tr. 16.) These reports ranged

from indicating no headaches to headaches occurring one to three times weekly. *Id.*

11

Accordingly, substantial evidence supports the ALJ's conclusion that Smith did not meet Listing 11.02.

## 2. The ALJ's RFC Assessment

Smith argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly relied on the state agency psychological consultant and improperly discounted the opinion of the consultative examiner. (ECF No. 15, PAGEID.798–799.) At this stage, Smith bears the burden to demonstrate that she has a more restrictive RFC than that found by the ALJ. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391–92 (6th Cir. 1999); *see also Jones*, 336 F.3d at 474.

### a. State Agency Psychological Consultant

After review of Smith's file on July 15, 2018, the state agency psychological consultant, Dr. Rom Kriauciunas, opined that Smith could perform simple, routine tasks on a sustained basis. (Tr. 23.) The ALJ found this opinion to be persuasive, stating that objective evidence supported Dr. Kriaucuinas' findings. (Tr. 23.) Because Smith has medical records spanning to December 2019, Smith contends that the ALJ's RFC determination is not supported by substantial evidence for several reasons: (1) failure to acknowledge that Dr. Kriauciunas did not review more recent evidence, (2) failure to indicate that more recent evidence was considered, and (3) failure to discuss Smith's ability to stay on task (ECF No. 15,

12

PAGEID.802–804; ECF No. 17, PAGEID.839.) The Commissioner asserts that the ALJ may rely on a physician's assessment regardless of whether it predates treatment by another physician. (ECF No. 16, PAGEID.824.)

Although ALJs are responsible for assessing RFC based on their evaluation of the medical and non-medical evidence, they are not required to rely on medical opinions. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination . . . and thus would be an abdication of the Commissioner's statutory responsibility.'"). Additionally, in considering medical opinions, an ALJ will not defer or give any specific evidentiary weight to any medical opinions. 20 C.F.R. § 404.1520c(a). The most important factors for an ALJ to consider are supportability, or degree to which objective medical evidence supports the opinion, and consistency, or degree to which the opinion is consistent with other evidence. *Id.* at 404.1520c(c). This analysis requires "sufficiently detailed articulation" of application of those factors in which the ALJ must "show [their] work, i.e., to explain in detail *how the factors actually were applied* . . . to each medical source. *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021) (finding that the ALJ failed to discuss the supportability and consistency factors).

13

Here, the ALJ considered the supportability and consistency of Dr. Kriauciunas' opinion, referencing medical facts and nonmedical evidence. Prior to concluding that Dr. Kriauciunas' opinion is persuasive, the ALJ summarized the record for approximately five pages. (Tr. 18–22.) This included discussion of medical documentation dated through December 2019. *Id.* The ALJ further referenced the record's parts that supported Dr. Kriauciunas' opinion, mentioning Smith's "routine and conservative" treatments, "unremarkable" mental status examinations, anxiety, and ability to engage in daily activities. (Tr. 23.) Moreover, although the ALJ did not explicitly mention that Dr. Kriauciunas did not review records after July 19, 2018, the ALJ states the date of Dr. Kriauciunas' findings and bolsters them with more recent references.[2] (Tr. 23.)

In arguing that the ALJ should have relied on a more recent expert opinion, Smith relies on *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908 (N.D. Ohio 2008). (ECF No. 15, PAGEID.801–802.). *Deskin* does not support Smith's contention. *Deskin* states that there may be no substantial evidence "[w]here the ALJ proceeds to make the residual functional capacity decision in the absence of a medical opinion as to functional capacity from any medical source, or . . . with one made without the benefit of a review of a substantial amount of the claimant's

___

[2] Notably, Smith does not challenge the ALJ's findings of persuasiveness regarding Dr. Robin Mika's opinion, who also reviewed the file on July 19, 2018. (Tr. 23.) Any such claim is waived.

14

medical records." *Id.* at 911. Neither scenario exists here—the ALJ made her determination based on several medical opinions, and she referenced the claimant's medical records in her rationale. (Tr. 23–24.)

Smith's argument that the ALJ should have indicated consideration of the factual record before assigning "greater weight" to Dr. Kriauciunas' opinion is meritless. (ECF No. 17, PAGEID.838–839). Medical opinions are not weighed differentially for disability claims filed after March 27, 2017. 20 C.F.R. § 404.1527. Instead, as discussed above, ALJs will not give specific weight to medical opinions in claims like Smith's, which were filed in June 2018. (20 C.F.R. § 404.1520c(a); ECF No. 15, PAGEID.786.)

Smith contends that the ALJ should have considered Smith's ability to stay on task. (ECF No. 15, PAGEID.804–805.) The ALJ does address this directly in her review of Dr. Kriauciunas' opinion, relying on his opinion that Smith can perform certain tasks on a "sustained basis." (Tr. 23.)

Substantial evidence supports the ALJ's reliance on Dr. Kriauciunas' findings.

### b.  Consultative Examiner

The neuropsychological consultative examiner, Dr. Kathryn Combs, diagnosed Smith and recommended certain workplace accommodations, such as use of assistive tools to aid with memory weakness. (Tr. 23.) The ALJ found this

opinion to be unpersuasive, stating that it is inconsistent with the other evidence. (Tr. 24.) Smith contends that the ALJ's RFC determination is not supported by substantial evidence for several reasons: (1) erroneously concluding that Smith's mental status is "unremarkable," (2) erroneously concluding that Smith can engage in a "wide range of daily activities," and (3) failing to justify her findings of Dr. Combs' opinion (ECF No. 15, PAGEID.806–810.) The Commissioner asserts that Smith is improperly asking the Court to reweigh the evidence and that substantial evidence support the ALJ's conclusions. (ECF No. 16, PAGEID.829–834.)

With her first two arguments, Smith fails to meet her burden to prove that she has a more restrictive RFC regarding her mental status and daily activities. Instead of identifying errors in the ALJ's findings, Smith impermissibly invites the Court to reweigh the medical record. For example, Smith contends that her mental status is remarkable because stress triggers her headaches, as affirmed by other physicians, (ECF No. 15, PAGEID.807) and that she is functionally limited because Smith's mother helps with chores (ECF No. 15, PAGEID.808.) But the Court's "task is not to reweigh the evidence. That is solely the province of the Secretary." *Mullins v. Sec'y of Health & Hum. Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) (citation omitted). Here, the ALJ acknowledged and weighed the evidence in the record, and specifically considered Smith's stress and anxiety. (Tr. 23–24.) The ALJ, not the Court, weighs the evidence. *Mullins*, 680 F.2d at 472.

16

Smith's argument that the ALJ improperly evaluated Dr. Combs' opinion also fails. As discussed, in evaluating medical opinions, supportability and consistency are the most important factors for an ALJ to consider. 404.1520c(c). Unlike in *Hardy*, the ALJ here articulated the supportability and consistency factors and referenced the record. The ALJ found no supportability or consistency in Dr. Combs' opinion, explaining that Smith's ability to play video games well, experience in semi-skilled occupations, and ability to take care of her teenage daughter contradict Dr. Combs' findings. (Tr. 24.) Finally, the ALJ had already found that Smith can perform activities with certain limitations. (Tr. 18, 24.) Because the standard of review is a highly deferential "substantial evidence" standard, the Court finds that a reasonable mind might accept as adequate that Smith's ability to engage in several activities does not align with Dr. Combs' finding that Smith needs additional accommodations.

The ALJ's decision to discount Dr. Combs' findings is thus supported by substantial evidence.

## III.   Recommendation

For the foregoing reasons, the Court **RECOMMENDS** that Smith's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

17

Dated:   March 4, 2022                        s/**Jonathan J.C. Grey**
                                              Jonathan J.C. Grey
                                              United States Magistrate Judge

## Notice to the Parties About Objections

Within 14 days of being served with a copy of this Report and Recommendation, any party may object to and seek review of the proposed findings and recommendations set forth above. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). If a party fails to timely file specific objections, any further right of appeal is waived. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Only specific objections to this Report and Recommendation are preserved for appeal; all other objections are waived. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). Each objection must be labeled as "Objection No. 1," "Objection No. 2," etc. Each objection must specify precisely the provision of this Report and Recommendation to which it pertains. In accordance with Local Rule 72.1(d), copies of objections must be served on this Magistrate Judge.

A party may respond to another party's objections within 14 days after service of any objections. Fed. R. Civ. P. 72(b)(2). Any such response should be concise and address each issue raised in the objections in the same order and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System on March 4, 2022.

s/ **M. Williams**
Michael Williams
Case Manager
